```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MASSACHUSETTS
```

_____
**DANIEL SILVA,**                           )
    **Plaintiff,**                        )
                                          )
  v.                                    )
                                          )
**ESSEX COUNTY CORRECTIONAL FACILITY,**)   Docket No. 04-cv-11769-NG
**SHERIFF FRANK COUSINS, LYNN HANSON,** )
**HOWARD CANUSCO, PEABODY POLICE**       )
**DEPARTMENT, SGT. SHEILA MCDAID,**     )
    **Defendants.**                       )
_____
GERTNER, D.J.

### MEMORANDUM AND ORDER RE: MOTION FOR SUMMARY JUDGMENT
### June 21, 2006

**I.   INTRODUCTION**

Plaintiff Daniel Silva ("Silva") has filed a civil action under 42 U.S.C. § 1983 in which he alleges that the defendants, sued in both their official and individual capacities, deprived him of his rights under the Eighth and Fourteenth Amendments. Specifically, Silva claims that he remained incarcerated in the Essex County Correctional Facility ("ECCF") for 153 days beyond his scheduled release date. The remaining defendants[1] in the case are Sheriff Frank Cousins ("Cousins"); caseworker Lynn Hanson ("Hanson"); the ECCF record keeper Howard Canusco ("Canusco"); and Peabody Police Department Sergeant Sheila McDaid ("McDaid"). The defendants now bring a motion for summary judgment.

---

[1] An additional defendant, the Essex County Correctional Facility, was dismissed from the case by an order dated October 29, 2004 [docket entry #5].

Based on the undisputed material facts of record, Silva cannot show that the defendants acted with the deliberate indifference required to make out his constitutional claims. Accordingly, I **GRANT** the defendants' motion for summary judgment [docket entry #32].

## II.  FACTUAL BACKGROUND

As an initial matter, I note that none of the parties has complied with Local Rule 56.1 of the United States District Court for the District of Massachusetts, which requires that the party moving for summary judgment include "a concise statement of the material facts of record as to which [it] contends there is no genuine issue to be tried . . . ."  The opposing party, in turn, is required to include in its opposition a similar statement of material facts as to which it contends there *is* a genuine issue to be tried.  Id.  Material facts set forth by the moving party "will be deemed for purposes of the motion to be admitted by opposing parties unless controverted" by the statement of facts set forth in opposition.  Id.

In this case, the defendants' "Statement of the Facts" contains only two references to the complaint.  The body of their memorandum in support of summary judgment contains additional references to the record, supported by attached exhibits, but does not characterize those "facts" as material or undisputed.

The plaintiff, for his part, offers no statement of disputed facts, though he does attach multiple exhibits to his opposition memorandum.  It is unclear, however, which of the defendants' factual assertions these exhibits are meant to challenge, as many of them refer to events that took place in 2001, well before the disputes over the plaintiff's 2003 release date.[2]  Though the plaintiff's pro se status suggests that this Court should "bend over backwards to be fair," the plaintiff's filings do not adequately put into dispute the facts -- meager as they are -- offered by the defendants.  FDIC v. Anchor Properties, 13 F.3d 27, 31 (1st Cir. 1994).

Thus, taking the defendants' citations to the record as the facts of this case, the undisputed material facts are as follows:

> Plaintiff was committed to the Essex County Correctional Facility on October 18, 2001 in Salem District Court for assault and battery, pursuant to M.G.L. Chapter 265, Section 13, Salem Criminal Docket Number 0036 CR 2919. Plaintiff received one year committed, with eleven (11) days credit for time served, as shown on the *mittimus* (order of commitment) issued on October 18, 2001 (Exhibit "A"). Subtracting the eleven days from October 18, 2001, the Plaintiff's effective date for time served was October 7, 2001, with a release date one year from that day, or October 6, 2002.

---

[2] The plaintiff's exhibits 1-3 concern charges in Maine dating from 2001.  Exhibits 4-6 appear to be printouts of computer screens containing several different release date entries.  It is unclear from which computer system these printout came or what their significance is.  To the extent that the plaintiff offers them as evidence that ECCF altered his release date, they are inconclusive, as it is unclear which conviction or convictions these computer screens reflect.

On July 8, 2002, the Plaintiff was sentenced to an additional nine months committed for the crimes of witness intimidation, pursuant to M.G.L. Chapter 268, Section 13b; and two separate violations of an abuse prevention order. The Plaintiff was sentenced out of Peabody District Court, and the Criminal Docket Numbers were 0286 CR 0594, 0186 CR 1776, and 0186 CR 1771, respectively. A *mittimus* was issued that same day, but listed no credit days (Exhibit "B"). A corrected *mittimus* reflected a credit of one hundred and sixty-five (165) days after the last sentence (Exhibit "C"), but was not issued by the Court until January 29, 2003, and was received by the Essex County Correctional Facility on January 30, 2003. This corrected *mittimus* resulted in the Plaintiff receiving a total credit of 176 days (165 plus the original 11 days from October 18, 2001).

Since the original commitment date was October 18, 2001, the Plaintiff received 176 days of credit, or a sentence effective date of April 25, 2001. The sentencing date of one year (on the original sentence) and the additional nine months (from the second sentencing) totaled six hundred and thirty-five (635) days. When the 635 days were added to the new sentence effective date of April 25, 2001 on the corrected *mittimus* (Exhibit "C") of January 29, 2003, the Plaintiff's institutional discharge date became January 19, 2003. The Essex County Correctional Facility acted to discharge the Plaintiff immediately upon receipt of the corrected *mittimus*–discharging the Plaintiff on January 31, 2003–but re-processing the Plaintiff because of events which had occurred in the state of Maine.

The state of Maine had issued a warrant for the Plaintiff's arrest on January 15, 2003, on a charge of aggravated assault (Exhibit "D"). (Therefore, even if the Plaintiff had been released from custody by the Essex County Correctional Facility on January 19, 2003, he would have been immediately released into the custody of the officials from the state of Maine's prison system, because of the issuance of the warrant of January 15, 2003.). Plaintiff was held in Essex County until February 4, 2003, when he

>     was released into the custody of the state of
>     Maine.

(Defs.' Summ. J. Mem. at pp. 3-4.)

## III. **ANALYSIS**

### A.  **Summary Judgment Standard**

A party is entitled to summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact."  Fed. R. Civ. P. 56(c). To be considered material, a disputed fact "must have the potential to affect the outcome of the suit under the governing law."  Hinchey v. NYNEX Corp., 144 F.3d 134, 139 (1st Cir. 1998) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)) (internal quotations omitted).  An issue of fact is genuine if a reasonable factfinder could resolve it in favor of either party.  Basic Controlex Corp., Inc., v. Klockner Moeller Corp., 202 F.3d 450, 453 (1st Cir. 2000).  Summary judgment is appropriate, however, "if evidence for one side is merely colorable, or is not significantly probative."  Id. (quoting Anderson, 477 U.S. at 249-50) (internal quotations omitted).

The party moving for summary judgment bears the initial burden of demonstrating that there are no genuine issues of material fact for trial.  Hinchey, 144 F.3d at 140 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  After the moving party shows that there is an absence of evidence to

support the nonmoving party's case, the burden shifts and the nonmoving party must demonstrate that a trier of fact reasonably could find in his or her favor.  Id.  In deciding a motion for summary judgment, a court must draw all reasonable inferences in favor of the nonmoving party.  Douglas v. York County, 360 F.3d 286, 290 (1st Cir. 2004).

### B.    42 U.S.C. § 1983 & Continued Detention Under the Eighth and Fourteenth Amendments

Under 42 U.S.C. § 1983, any "person," acting under the color of state law, who "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  42 U.S.C. § 1983.

Though the First Circuit has not ruled on the issue,[3] other circuits recognize a constitutional right actionable under § 1983 to be free from continued detention after an inmate is entitled to release.  There is some confusion among the circuits as to where this constitutional right is grounded, either in the Eighth Amendment right to be free from cruel and unusual punishment and/or in the Fourteenth Amendment due process clause.  Yet despite their disagreement over the constitutional source of this right,

---

[3] In Pasterczyk v. Fair, the First Circuit declined to address this question.  819 F.2d 12, 15 (1st Cir. 1987) ("Neither do we speak as to whether appellant's claims [concerning continued detention after his release date] are cognizable under § 1983.").

circuit courts' analyses of inmates' continued detention claims are essentially the same.

Most circuits to have addressed this issue have recognized an Eighth Amendment right to be free from imprisonment after an inmate's date of release. The Third Circuit, for example, has stated: "We think there can be no doubt that imprisonment beyond one's term constitutes punishment within the meaning of the eighth amendment." Sample v. Diecks, \885 F.2d 1099, 1108 (3d Cir. 1989). The Sample court held that to state a § 1983 claim under the Eighth Amendment for continued detention:

> [A] plaintiff must first demonstrate that a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted. Second, the plaintiff must show that the official either failed to act or took only ineffectual action under circumstances indicating that his or her response to the problem was a product of deliberate indifference to the prisoner's plight. Finally, the plaintiff must demonstrate a causal connection between the official's response to the problem and the infliction of the unjustified detention.

Id. at 1110; see also Campbell v. Peters, 256 F.3d 695, 700 (7th Cir. 2001)(recognizing an Eighth Amendment right where prisoner was held beyond his release date as a result of deliberate indifference); Haygood v. Younger, 769 F.2d 1350, 1354 (9th Cir. 1985)(en banc)("Detention beyond the termination of a sentence could constitute cruel and unusual punishment if it is the result of 'deliberate indifference' to the prisoner's liberty interest .

. . .") cert. denied sub nom. Cranke v. Haygood, 478 U.S. 1020 (1986).

Other circuits frame incarceration beyond an inmate's release date as a Fourteenth Amendment due process violation. See, e.g., Jones v. City of Jackson, 203 F.3d 875, 880-81 (5th Cir. 2000) (affirming the denial of qualified immunity to the defendants on the plaintiff's Fourteenth Amendment due process claims stemming from his detention beyond his release date); Cannon v. Macon County, 1 F.3d 1558, 1563 (11th Cir. 1993)(finding a Fourteenth Amendment violation in continued detention and adopting the deliberate indifference requirement from Eighth Amendment analyses). Yet another interpretation holds that improper continued confinement violates the Fourteenth Amendment before trial and the Eighth Amendment after conviction. Jones v. Chicago, 856 F.2d 985, 994 (7th Cir. 1988).

However, this confusion among the circuits is irrelevant. As the Northern District of Florida noted in McMurry v. Moore, "it is unclear whether due process or the Eighth Amendment is implicated by plaintiff's complaint [alleging incarceration past his release date], or both. Since both claims require a finding of subjective culpability, however, and that standard (deliberate indifference) is the same it makes no difference." 242 F. Supp. 2d 1167, 1180 (N.D. Fla. 2002).

Since the standard for deliberate indifference is the same regardless of the constitutional source of the plaintiff's claims, I will adopt the Third Circuit's clear three-step inquiry outlined in Sample for the analysis in this Memorandum and Order.

C.  **The Defendants' Motion For Summary Judgment**

To survive the defendants' motion for summary judgment, then, the plaintiff must show that a reasonable factfinder could conclude, based on the undisputed material facts outlined above, that the defendants (1) had knowledge of the plaintiff's problem; (2) either failed to act or took only ineffectual action such that the defendants' response to the problem was a product of deliberate indifference to the prisoner's plight; and (3) that there was a causal connection between the defendants' conduct and the unjustified detention. Sample, 885 F.2d at 1110.

In the case at bar, it is undisputed that the defendants had knowledge of the plaintiffs' problem, i.e., the fact that he was held at ECCF after January 19, 2003. No reasonable trier of fact, however, could conclude that the defendants' response amounted to deliberate indifference.

In the First Circuit, "deliberate indifference" refers to a relatively serious level of wrongdoing. Indeed, concepts such as "[w]illful blindness and deliberate indifference are not mere negligence; these concepts are directed at a form of scienter in which the official culpably ignores or turns away from what is

otherwise apparent." Alsina-Ortiz v. Laboy, 400 F.3d 77, 79, 82 (1st Cir. 2005) (reversing the district court's grant of summary judgment to a prison official who was accused of deliberate indifference in ignoring the suffering of an inmate who "was in considerable pain, was seriously disabled, cried and screamed in pain and [was] half paralyzed").

According to the undisputed material facts in this case, the ECCF received the corrected *mittimus* from the Peabody District Court on January 29 or 30, 2003. (Defs.' Summ. J. Mem. at p. 3; Defs.' Exhibit C at p. 5.) The next day, the ECCF discharged the plaintiff, but re-processed him due to his outstanding warrant in Maine, which had issued on January 15, 2003. (Defs.' Exhibit D.) The plaintiff was then held until February 4, 2003, when he was released into Maine custody. (Defs.'s Summ. J. Mem. at p. 4.) The defendants also note, correctly, that even if the plaintiff had been released on the correct date of January 19, 2003, the January 15, 2003 Maine warrant would have required his continued incarceration in Maine. (Id.)

Based on the undisputed material facts of record, I conclude that no reasonable trier of fact could find that the defendants acted with deliberate indifference to Silva's plight. In fact, the opposite is true: The ECCF and its personnel acted swiftly to discharge the plaintiff once they received the corrected *mittimus*. The fact that the plaintiff was transported to Maine

for continued incarceration was not the result of any wrongdoing on the defendants' part, but rather stemmed from the outstanding warrant against him.[4]  Moreover, though it is clear that an incorrect *mittimus* was issued, there is simply nothing in this record to support the plaintiff's claims that the defendants deliberately falsified any *mittimus* at issue in this case.[5]  It appears from this record that any negligence, mistake, or other mishap that led to the issuance of the incorrect *mittimus* occurred at the Peabody District Court and not at the ECCF.

Thus, none of the undisputed material facts of record shows that the defendants "either failed to act or took only ineffectual action such that the defendants' response to the problem was a product of deliberate indifference to the prisoner's plight."  <u>Sample</u>, 885 F.2d at 1110.  Because I have found that the plaintiff could not prove the defendants' deliberate indifference, I need not proceed to the third step of

---

[4] Defendants also argue that the Massachusetts Parole Board is the proper defendant in this type of claim.  In making this argument, they characterize the plaintiff's claim as targeting his parole eligibility date, rather than the date on which his sentence was complete.  The plaintiff, however, contends that the defendants held him beyond his release date, not that they improperly denied him parole.  As a result, this argument by defendants misses the mark.

[5] Defendants' Exhibit C appears to be the corrected *mittimus* reflecting 165 credit days.  The date of 1/30/03 seems to have been typed on top of the date of the previous, uncorrected mittimus, 7/8/02.  (*Compare* Exhibit B *with* Exhibit C.)  The defendants also include a "clean" copy of the 7/8/02 *mittimus* in their exhibits, which is perhaps the true previous, uncorrected document.  I note that the defendants' exhibits are disorganized and not clearly labeled, which makes reference to a particular page of the record difficult.

the Sample inquiry.  I conclude that the defendants are entitled to summary judgment.

## IV. CONCLUSION

Because no reasonable trier of fact could determine that the defendants acted with deliberate indifference to the plaintiff's situation, I **GRANT** the defendants' motion for summary judgment [docket entry #32].  I also **DENY** the plaintiff's motion to amend his complaint, to the extent that he moved to amend in his opposition to the defendants' motion for judgment on the pleadings [docket entry #24].

**SO ORDERED.**

**Dated: June 21, 2006**                                  **s/NANCY GERTNER, U.S.D.J.**